Christian, J.,
delivered the opinion of the court.
This case is before us on appeal from a decree of the chancery eourt of the city of Richmond.
*447 . As the case is presented by the record before us, we are . J , ’ not required to pass upon the merits of the controversy.
The only question we have to determine is, whether chancery court erred in abating the attachment sued out by the appellants (the attaching creditors) against the appellee, the “ Universal Life Insurance Company.”
This question, elaborately and ably argued by the counsel on both sides, is, we think, on examination of the record, a very narrow one. It is simply this—whether the Universal Life Insurance Company, a company incorporated by the state of New York, but doing business in this state, and complying with the requisitions of the statutes of this state respecting foreign insurance companies, is liable to suit in foreign attachment.
The solution of this question depends upon the further and.sole question whether, in view of our statutes authorizing such companies to transact business in this state, they are to be regarded as residents of this state within the meaning of the foreign attachment laws.
If the appellee was, at the time of suing out the attachments in this case, resident in the state of Virginia, then the chancery court properly abated the attachment.
If, on the contrary, the appellee was non-resident of this state, it was error in the chancery court to abate the attachments sued out by the appellants.
Nothing is better established by all the cases and text-writers on the subject of corporations, than that a corporation can have no legal existence outside of the boundaries of the sovereignty by which it was created. While it may, by its agents, transact business anywhere, unless prohibited by its charter or prevented by local laws, it can have no residence or citizenship except where it is located by or under the authority of its charter. As was said by Chief Justice Taney, in Bank of Augusta v. Earle, 13 Peters’ R. 519, “It exists by force of the law (creating it), and where that ceases to operate, the corporation can have *448 D0 existence. It must dwell in (he place of its creation, . * and cannot migrate to another sovereignty. In ex parte 6 Otto, 377, Chief Justice Waite said, “A corporation cannot change its residence or its citizenship, It can have its legal home only at the place where it is locatcd by or under the authority of its charter, but it may, by its agents, transact business anywhere, unless prohibited by its charter or excluded by local laws.”
In Drake on Attachments (3d ed.), § 80, the proposition is stated, on abundant authority, as follows: “ The foreign character of a corporation is not to be determined by the place where its business is transacted, or (even) where the corporators reside, but by the place where its charter was granted. With reference to inhabitancy, it is considered as an inhabitant of the state in which it was incorporated .”
These general principles, respecting the residency or inhabitancy of corporations, cannot be denied or questioned. But if is earnestly contended, with much ingenuity by the learned counsel for the appellee, that the case before us is taken out of the operation of these acknowledged rules of law applicable to corporations generally, by the provisions of our statutes respecting foreign insurance companies doing business in this state, and the decisions of this court construing such statutes. It is necessary, therefore, to refer to the statutes of this state, and to the decisions of this court construing these statutes, to determine whether these statutes and these decisions, remove this case out of the operation of the general legal principles above declared.
The 19th section of chapter 36, Code of 1873, provides that no insurance company, unless incorporated by the legislature of the commonwealth, shall make any contracts of insurance within this state, until such insurance company shall comply with the provisions of the act as therein declared. One of these provisions is, that every such in *449 surance company shall, by a written power of attorney, appoint some citizen of this commonwealth, resident therein, its agent or attorney, who shall accept service of all lawful processes against such company in this commonwealth, and cause an appearance to be entered in any action, in like manner as if such corporation had existed and been ■duly served with process within this state. And the statute further provides, that every foreign insurance company, carrying on business in this state, shall first obtain a license for that purpose; and the conditions upon which such license shall issue is declared to be a deposit with the treasurer of the commonwealth, certain bonds therein named, to the amount of at least ten thousand dollars.
It is plain that these provisions of our statute simply grant to foreign insurance companies the privilege of doing business in this state, upon the conditions prescribed in the statute.
The decisions of this court relied on by the appellees counsel as construing this statute and as declaring in effect that such foreign insurance companies are residents of this ■state, are the two cases of Continental Ins. Co. v. Kasey, 25 Gratt. 268, and Connecticut Mut. Life Ins. Co. v. Duerson’s ex’or, 28 Gratt. 630. It is insisted that these cases determine that foreign insurance companies doing business in this state, and who have complied with the provisions of the statute above referred to, are residents of this commonwealth, and therefore no foreign attachment can be issued against them, they being residents and not nonresidents of this state.
In the first named case—Continental Ins. Co. v. Kasey— the only question was the right on the part of the company to remove the cause from the state court, where it was pending, to the circuit court of the United States. Whatever was said in that case was, of course, said with reference to the question of removal, and to that question only.
*450 That case was an action on a policy of fire insurance J issued by the Continental Insurance Company, a eorporachartered by the state of New York, but doing business under a license granted by this state, after complying with the provisions of the statute in appointing its agent to acknowledge service of process, and depositing the required amount with the treasurer of the commonwealth. The question, as presented by the record in that case, did not involve the merits of the controversy, but, as stated in the very first sentence of the opinion, presented the single question, whether the company had the right to remove its case from the slate court to the federal court.
Upon that question this court, after carefully reviewing the statutes respecting foreign insurance companies, said: “ The plain object of these provisions of the statute is to give to our citizens the privilege of suing these foreign corporations in the courts of this state. It would be in the last degree a futile and incongruous provision of the law if the privilege to sue in the state courts is to be at once defeated; if the corporation, as soon as suit is brought, may remove the case to another and foreign jurisdiction. This would be to defeat the very object of the statute. These corporations are placed by our statute on precisely the same footing quoad hoc as home corporations, and when they come into this state and accept the provisions of our statute law, they become domiciled here; and as to all contracts and obligations made and assumed under the provisions of our laws, they are no longer citizens of another state, but are subject to the laws, to sue and be sued, as citizens of this state. The Continental Insurance Company, though chartered by the state of New York, when it commences business in this state, apd complies with the terms of the statute of Virginia, by making the necessary deposit and appointing an agent to accept process, becomes, as to all contracts with citizens of Virginia, domiciled here, and in contentions with our citizens grow *451 ing out of policies of insurance must sue and be sued in our state courts, and do not come within the terms or spirit of the act of congress relating to the removal of causes from a state court to a federal court.”
Now the general language here used must of course be explained with reference to the subject before the court; and the principles declared in general terms must be understood only with reference to the facts before the court and the case in hand.
In that case (Continental Ins. Co. v. Kasey), the only and single question (stated in the first sentence of the judge who delivered the opinion) was, whether the court below erred in refusing to remove the cause to the federal court.
To this proposition to remove the cause to another jurisdiction on motion of the foreign insurance company, this court (affirming the judgment of the circuit court) simply said to the company: “No; you cannot do this. You have come into this state to transact business upon the conditions which the statute laws of this state has plainly prescribed. You have accepted the privilege, from which the state had a right to exclude you altogether, and that privilege—to carry on business in this state—was upon the express condition that you should have an agent here to accept service of all process in suits brought by citizens of this state on contracts made with you with reference to insurance. By accepting the conditions imposed by the statute, you have submitted to the jurisdiction of the state courts, and you cannot evade that jurisdiction by claiming that you are resident in another state. Quoad hoc you are a resident of this state, and domiciled here, so far as the right to sue you here, on all contracts of insurance made here, is concerned. Coming here, and availing yourself of the privilege to do business in this state, you accepted the provisions of the statute and waived quoad hoc your rights as a non-resident.”
This is all the court meant to declare and did declare in *452 the case of Continental Ins. Co. v. Kasey, and the language of the court, when construed with reference to the case in hand, means this and nothing more.'
Certainly it was never intended iu that opinion to declare the broad proposition that a foreign insurance company doing business in this state has its residence and inhabitancy in this state.
As was well said by Chief Justice Campbell, in the Michigan case above cited, “Where a foreign insurance company submits itself to the exclusive jurisdiction of the courts of this state as a condition of doing business here, it waives any right it may possess as a quasi citizen of another state to remove its case to the courts of the United States”; and this was all this court decided in Continental Ins. Co. v. Kasey.
Nor is the more recent case of Connecticut Mut. Ins. Co. v. Duerson’s ex’or, 28 Gratt. 630, at all in conflict with the views above expressed. Upon an incidental question raised in that case, on the plea of the statute of limitations, Judge Anderson said, in careful and guarded language, “ The company having a local existence and domicile in this state, for the purpose of being sued, the statute of limitations may be relied on just as if the company had been chartered by an. act of the Virginia legislature.” I understand the opinion in this case simply to declare that with respect to suits brought on contracts of insurance made in this state, the company complying with the terms of the statute has a local existence and domicile here with respect to such cases; and when sued in our courts may, like other defendants, plead the statute of limitations, or make all the defences which any other defendant may make.
I am of opinion, therefore, that neither the statute law, nor the decisions of this court construing those statutes, changes the status of foreign insurance companies with respect to their residence and habitat. Under the law, well *453 established by the authorities above referred to, a foreign insurance company cannot change its residence or its citizenship. In the language of Chief Justice Waite, in ex parte Schollenberger, 6 Otto, 377, “ it can have its legal home only at the place where it is located by or under the authority of its charter.”
I am, therefore, of opinion that the Universal Life Insurance Company is a non-resident of the state of Virginia, and may be proceeded against as any other non-resident under our foreign attachment laws, and that the decree of the chancery court abating the attachment must be reversed.
The decree was as follows:
This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons staled in writing and filed with the record, that the decree of the chancery court of the city of Richmond abating the attachments sued out in these causes was erroneous; it is therefore decreed and ordered that the said decree of the said chancery court be reversed and annulled, that the appellants recover against the appellees, the Universal Life Insurance Company, their costs by them expended in the prosecution of their appeal here. And this court, now proceeding to enter such decree as the said chancery court ought to have rendered, doth decree and order that the said attachments were properly sued out against the said Universal Life Insurance Company; the said company, in the opinion of this court, being a non-resident within the meaning of the foreign attachment laws of this state.
Decree reversed.