Willoughby, J.
The statute of Virginia prescribes (Acts of 1866-7, chapter 75,) that “ every deed of trust conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers forvalu *548 able consideration without notice, until and except from the time that it is duly committed to record in the county or corporation wherein the property embraced, gae|1 C0Dtract or deed may be.”
This statute must cbntrol the decision of this case ; for although the deed in controversy was executed in New York by parties residing there, there being no evidence of any difference between the law of New York and our own, the law is presumed to be the same as here.
If this is a deed of trust contemplated by the statute,, conveying the goods and chattels attached by creditors, it is, by the terms of such statute, void as to such creditors, until the time it is duly admitted to record as pre- . scribed.
The first question suggested is, whether the deed in this case is one contemplated by the statute. It differs from many deeds of trust, in the fact, that it required the trustees to take possession forthwith of the property conveyed.
One object of requiring deeds of trust to be recorded, no doubt, is to preclude the danger that otherwise might exist, that third persons might be led to trust and deal with the party in possession as if he were the real owner, when, in fact, there is a deed in existence showing that he was not. But I think we cannot say, especially where a statute is so broad and imperative as this, that it is the only object.
It applies to all creditors, whether they have notice or not; 4 Rand. 208; and whether the credit was obtained on the fact of such possession or not. It is true, that in most of the States it has been held that possession of goods thus transferred is equivalent to a record of the deed; but this may be, because either that their statutes permit this to be so, or because such possession gives notice to creditors as well as others of such transfer; neither of which reasons is applicable here.
*549 It is urged that an assignment might have heen made of these goods and chattels by writing without seal; that if it had been so made it would not been required to be recorded because not a deed, and there can be no reason why the mere addition of a seal should render it necessary to have it recorded.
Whether it would be required that an assignment without seal should be recorded it seems to me hardly necessary to enquire. The case before us is that of a deed. That and that only is the foundation of the appellants claim. The statute says that a deed, to have effect against creditors, must be recorded. If the parties had elected to make a mere assignment instead of a deed, we might have had a different question. I do not see how the argument can have any force, except to show that no deed of trust conveying goods •and chattels need be recorded, notwithstanding the •statute, for the same thing may be accomplished by a mere assignment of goods and chattels, or a transfer without seal, as by a deed, in almost any case.
In Clark v. Ward & others, 12 Gratt. 440, a deed similar to this was executed, which was recorded; but a question was made as to the sufficiency of the acknowledgment to allow it to be recorded. The trustees had taken possession of the goods, had held possession for several months, and had partially executed their’trust, when an attachment was levied upon them.
This court, without passing upon the question of the sufficiency of the certificate, held — “ As it appeared from the evidence, that the execution of said deed was accompanied, or in good faith soon followed, by a delivery of the personal propertyáin said deed mentioned, there was a complete and valid transfer of said property to the trustees, and that the recording of the deed was in no wise essential to the protection of said property against the demands of creditors who had not *550 acquired liens upon the same before the said transfer was consummated.
It is easy to imagine cases in which it would work manifest injustice, and be against the policy of the-statute, to insist upon its interpretation according to its-strict letter. This is so with almost any statute.
It may be supposed that a storehouse fall of different articles, may have been, under such a deed, taken possession of by the trustees, and have been sold to a great many different purchasers, and have passed through the-hands of several bona fide purchasers, and have been scattered far and wide; that such trustees have fully completed their trust, and years have elapsed since the execution of the deed, the creditors all the time making no opposition to their proceedings.
Such a case might show us the propriety of construing such a statute according - to its spirit and policy rather than to insist upon its strict letter. But the fact that under such circumstances a deed might not be-required, I do not think would compel us to hold that where no actual possession had taken place, when there is no possession except what might be regarded a technical possession gained by a delivery of this very deed, where nothing whatever had been done under it, and the rights of no third party could be affected thereby, in the face of this statute no record would be required. How, in the case of Clark v. Ward, although the circumstances were not as extreme as the case supposed, yet the reasons for varying from the letter of the statute were much stronger than in the ease at bar. I do not think that it, as a precedent, requires us to deviate from the letter in this case.
It cannot be denied that the principle of such decision as there stated, logically carried out, without reference to the facts of the case before the court very strongly supports the position of the appellants; but the fact that the court went beyond the letter to a certain extent,, *551 does not, I think, require us to go a good deal farther • • 4' than they did in the same direction. There is a limit beyond which, even elastic substances ought not to extended; and it seems to me a statute so inflexible as this, was sufficiently extended in that ease.
Suppose that it be admitted that actual possession and other circumstances sufficient to show a sale and delivery of the goods assigned, will be sufficient as against creditors. And perhaps it may be that the principle of the, case of Clark v. Ward, was, that circumstances such as possession and a partial action on the part of the trustee with the acquiescence of the assignor were sufficient to consummate a transfer of the title which ought not to be avoided because there was also a void deed; yet, even this would not sustain the claim of the appellants in this case. There is nothing on which to stand except this deed. Even the technical possession which they may claim is founded upon this deed and upon this alone. Nor can I see upon what principle it can be held, that because the trustee is required to take possession forthwith, the deed need not be recorded. It would have been the duty of the trustee to take immediate possession if this provision had not been inserted.
If these views be correct, it may be admitted that there was no negligence on the part of the trustee in taking possession, and that he had sufficient excuse for not taking actual possession. The want of diligence on his part might have been a circumstance to show a fraud as against creditors; but it is not on the ground of fraud that this deed is sought to be impeached.
The circumstances of this case, no doubt, do show sufficient diligence on his part, and a sufficient excuse for his not taking actual possession forthwith, and the utmost good faith on the part of all the parties to the deed. "Were these the questions in the ease, they would very likely be decided in his favor. But the question *552 is, should this deed, to he valid as against the creditors, have been recorded ? ,
Even if it he admitted that he had the technical possession by a delivery of the deed to him, whilst such a possession might do away with the prima facie presumption of fraud, it would not help him upon this question.' All these circumstances would not make a case nearly as strong as those of Clark v. Ward, upon which such reliance is placed by the appellants. The cases of Wilt v. Franklin, 1 Binn. R. 502; Gibson v. Stevens, 8 How. U. S. R. 384; and other cases to the same effect, cited by the counsel for appellants, present the questions rather of diligence and good faith, and were decided upon the ground that there was sufficient evidence of both in those cases to do away with the presumption of fraud. As this is not the question before us, I do not think that those cases are applicable to this enquiry.
Another view of this case was very ingeniously taken and very elaborately argued by the counsel for appellants. It was urged that the goods having been consigned to commission merchants under a contract on their part to sell the same and account to the consignors for the proceeds, such consignors had an election either to demand that the consignees fulfill such contract and render such account, or to consider the goods as their own subject to the lien of the consignees for advances, commission, &c.; that if they elected the former, they had merely a chose in action against such consignees, which does not come within the definition of goods and chattels according to the statute; and that the creditors had no right, by a levy of an attachment upon these goods, to deprive the consignors or their trustee of such right of election.
There is no evidence in the case that any such right of election, if it existed, had been exercised before the levy of the attachment, or at least that it had been determined to consider the claims upon the consignees as merely a chose in action.
*553 On the contrary, the evidence tends to show that this was not the case. The affidavit of Thomas Potts is, that such consignees had on hand the said- property “belonging to Halsted & Putnam,” the consignors.
But it was claimed that the petitioner had the right, which had passed to him by the assignment or deed,- to make such election even after the levy of the attachment, and that he could not be deprived of such right of election by such attachment.
blow without passing upon the question whether a chose in action comes within the meaning of the terms .goods and chattels, according to the statute, let us examine the situation of the property levied upon by the attachment, which certainly were goods and chattels, and the relation of the parties to the property. So far as they were concerned, the deed not having been recorded, no title passed by such deed as against the creditors, to the trustee, at the time of the attachment. Whatever title the grantors had to these goods and chattels still remained in them; and the nature of such title depended upon the understanding or contract between them and the commission merchants.
blow what is the general understanding when goods are consigned to commission merchants, to be sold and an account to be rendered of the proceeds ? Is it not plainly that no title passes so long as they remain in the hands of such merchants? Such merchants act as agents with power to sell the goods and transfer the title of the owner. Even if this relation is such that they are bound to make such sale, this does not transfer to them the legal title to the goods.
bTobody would think of undertaking to hold such goods as the property of the commission merchants while in this condition.
I think it very plain, therefore, that at the time of the levy of the attachment the legal title to these goods was, so far as the creditor is concerned, in the consignor.
*554 Jt seems to me too very doubtful whether under such . . circumstances the consignors had a right to elect to consider the goods as belonging to the consignees without their consent, and to be in a position to claim that they acCount for the proceeds whether there is a-sale or not. Even if they had such right, it is very clear that the title to the goods would not pass, nor could an action be maintained until such an election was made known to the commission merchants. And I think it equally clear, that before an action could be maintained, the merchants, after such election should be made known to them, have a reasonable time to make sale of the goods and account for the proceeds.
But again: suppose, for the sake of the argument,, that at the time of the levy of the attachment, the consignors had the peculiar position contended for. They then have the right, of course, to have the title of the goods in them of their own volition, even if it is not in them; and thereupon, upon paying the advances and commissions which may be a lien upon the property to take it into their possession. Even this right would amount, to say the least of it, to a special or qualified property in the goods, which I think, is clearly the subject of attachment. The officer acquires the right to transmit, first, the property he seizes, and has just such property in the goods as the debtor had. If the debtors had the right of election, then the officer seizes upon and acquires this right, and stands in their places, and can assert the right to elect to consider the goods as his property, and to sell them subject to the lien, as he has done. In no possible aspect, it seems to me, can these goods be considered to be in such a situation as to deprive creditors of the right of levying upon them by attachment; and I cannot see upon what principle it can be held, that because thereby the debtors may be deprived of some privileges that they may claim to have had concerning such property, this should deprive *555 the creditors of such right. The judgment of the court "below should therefore he affirmed.
Dorman, J., concurred in affirming the judgment.
_ Judgment appirmed: